UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| INVISIBLE FENCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. _____ |
| | ) | |
| PROTECT ANIMALS WITH SATELLITES, LLC, | ) | |
| KEN EHRMAN and CESAR MILLAN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

This is a complaint for trademark infringement and unfair competition. Plaintiff Invisible Fence, Inc. ("IFI"), the owner of the INVISIBLE FENCE family of marks, is the pioneer and, for five decades, the leader in the field of electronic pet containment systems. Defendant Protect Animals With Satellites, LLC d/b/a Halo Collar ("PAWS"), which is led by Defendants Ken Ehrman ("Ehrman") and Cesar Millan ("Millan") (collectively, the "Defendants" or "Halo"), is a recent entrant to the field. Halo's early advertising (in 2020) used IFI's INVISIBLE FENCE® and related trademarks without authorization. IFI demanded it cease and desist. Ehrman committed, on behalf of Halo, that Halo would "honor the trademark going forward." Halo now dishonors this commitment, attempting to make a place for itself in the market through unlawful use of IFI's famous marks and other acts of unfair competition. Because Halo has rebuffed IFI's multiple attempts to cajole its compliance with IFI's trademark rights and cease Halo's unauthorized use of IFI's marks, IFI hereby states the following claims against Defendants PAWS, Ehrman, and Millan.

**PARTIES**

1.      IFI is a corporation organized under the laws of the State of Delaware. Its principal place of business is located at 10427 PetSafe Way, Knoxville, Tennessee 37932.

2.      On information and belief, PAWS is a limited liability company organized under the laws of the State of Delaware. It has a regular and established place of business at 7950 Legacy Drive, STE 400, Plano, Texas 75024. Its authorized agent for service of process is PHS Corporate Services, Inc, which is located at 1313 N. Market St., STE 5100, Wilmington, Delaware 19801.

3.      On information and belief, PAWS does business, in whole or in part, as "Halo" and/or makes, markets, sells, and offers to sell a pet containment product that uses a GPS-based wireless dog collar (the "Halo Collar") under the name "Halo by Protect Animals with Satellites, LLC." The bottom of the website for the "Halo Collar" contains the following statement:

© 2023 | Halo® by Protect Animals with Satellites LLC

4.      On information and belief, PAWS owns, operates, and maintains the website https://www.halocollar.com/, through which "Halo Collar" products can be purchased throughout the United States, including in the State of Tennessee.

5.      On information and belief, Ehrman, an individual, is a citizen of the State of New Jersey and resides at 71 Rolling Ridge Road, Upper Saddle River, New Jersey 07458. He is a founding partner, shareholder, officer, and manager of PAWS. He has control over PAWS.

6.      On information and belief, Millan, an individual, is a citizen of the State of California. He is a founding partner, shareholder, officer, and manager of PAWS. He has control over PAWS.

2

7.      On information and belief, at all times relevant hereto, Ehrman and Millan were both agents, affiliates, officers, directors, managers, principals, alter-egos, and/or employees of PAWS and were at all times acting within the scope of such agency, affiliation, alter-ego relationship, and/or employment. Both actively participated in or subsequently ratified and adopted, or both, all the acts and conduct alleged herein, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each violation of IFI's rights and the damages to IFI proximately caused thereby.

## JURISDICTION AND VENUE

8.      This lawsuit arises under the laws of the United States, namely, trademark infringement under the Lanham Act, 15 U.S.C. § 1114 *et seq.*, and federal unfair competition under the Lanham Act, 15 U.S.C. § 1125 *et seq*. This Court has subject matter jurisdiction over these claims under 15 U.S.C. §§ 1117 and 1125(a).

9.      IFI also alleges violations of the laws of the State of Tennessee for trademark dilution under Tenn. Code Ann. § 47-25-513 *et seq.*, and common law trademark infringement. These claims are part of the same case or controversy as IFI's claims arising under the laws of the United States, such that they would ordinarily be expected to be tried in a single judicial proceeding. Accordingly, this Court has proper supplemental subject matter jurisdiction over IFI's state law claims under 28 U.S.C. § 1367(a).

10.      This Court has personal jurisdiction over Defendants because, by and through PAWS or otherwise, they have committed acts within this District giving rise to this action and have established minimum contacts with this forum such that the exercise of jurisdiction over them would not offend traditional notions of fair play and substantial justice. On information and belief, Halo has extensive contacts with and regularly transacts business in the State of

3

Tennessee and this District: It offers its Halo Collar products to Tennessee customers through an online store on the interactive website www.halocollar.com; it interacts with Tennessee customers through its Zoom-powered Halo Dog Park service platform; and it allows Tennessee customers to register and access personalized customer accounts through its website. Through this website and other online advertising platforms such as www.google.com and www.facebook.com, Halo advertises its products to and solicits business from Tennessee residents and ships products into Tennessee, including into this District.

11.  For example, Halo advertised and sold a Halo Collar product through the website www.halocollar.com to a resident of Tennessee located in this District on or about September 1, 2023. The collar was shipped into Tennessee and this District on or about September 5, 2023, and was delivered on or about September 9, 2023.

12.  This Court also has personal jurisdiction over Halo because Defendants have knowingly infringed, and continue to knowingly infringe, IFI's trademark rights within the State of Tennessee, including in this District, by advertising, marketing, and shipping products to customers, resellers, and/or partners in the State of Tennessee and this District. Further, IFI has incurred, and continues to incur, damages to its interests in Tennessee.

13.  On information and belief, Defendants Ehrman and Millan direct, control, ratify, participate in, and/or manage, and are the moving force behind, PAWS and the sale, advertisement, and/or distribution of Halo Collar products at all relevant times. On information and belief, Ehrman and Millan derive profits, as founding partners and shareholders of PAWS, directly from PAWS's revenue, including revenues made from the sale of Halo Collar products in the State of Tennessee and this District.

14. Venue is proper under 28 U.S.C. § 1391 as this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred as set forth above.

## STATEMENT OF FACTS

### IFI's Family of INVISIBLE FENCE Trademarks

15. Electronic pet containment systems are solutions designed to keep pets within a predefined perimeter. Traditionally, these systems have used a receiver collar, worn by a pet, in communication with a buried-wire transmitter surrounding the perimeter of a yard. If the pet gets too close to the perimeter defined by the buried wire, the collar issues corrective feedback, such as an audible tone, vibration, or static, to urge the dog to turn around and stay within the designated perimeter. Recently, pet containment systems have incorporated GPS technology, instead of a buried-wire transmitter, to define the containment perimeter and determine the position of the collar vis-à-vis the perimeter.

16. IFI is a leading brand of pet products, including pet containment systems, some of which use GPS-based wireless dog collar receivers. Throughout its almost fifty years of business, IFI and its authorized licensees (together, "IFI") have provided IFI's unique, high-quality products to consumers and retailers in the United States using an extensive dealer network and widespread marketing campaigns. As a result, IFI is and long has been a market leader in electronic pet containment systems.

17. For decades, IFI has invested significant time, effort, and money in advertising its pet containment products through its famous family of marks, including INVISIBLE®, INVISIBLE FENCE®, and INVISIBLE FENCING® (collectively, the "IFI Trademarks"). IFI has been continuously using some of or all the IFI Trademarks, or variations of the marks

Case 3:23-cv-00403-JRG-JEM   Document 1   Filed 11/09/23   Page 5 of 35   PageID #: 5

featuring the terms INVISIBLE and FENCE, for pet containment products since at least the 1970s.

18.     Through its superior quality, diligent enforcement, and decades of exclusive use of the IFI Trademarks for products related to pet containment systems, consumers have come to associate the IFI Trademarks (or other variations featuring the terms INVISIBLE and FENCE) with the products provided by IFI.

19.     In the same way, IFI has acquired significant common law rights in the IFI Trademarks (and other variations featuring the terms INVISIBLE and FENCE) for pet containment system products and accessories.

20.     IFI protects its brand through various means, including but not limited to the federal trademark registrations it holds. IFI is the owner of the U.S. Trademark Registration No. 1,371,021 for the trademark INVISIBLE FENCING (the "'021 Registration") for use in connection with electronic pet containment systems and components thereof, a copy of such registration being attached hereto as **Exhibit A**. The application for such trademark was filed on July 17, 1984, and the registration issued on November 19, 1985. Affidavits under Sections 8 and 15 of the Lanham Act have been filed with, and accepted by, the United States Patent and Trademark Office, and such registration is incontestable under 15 U.S.C. § 1065. As set forth in the attached **Exhibit A**, the INVISIBLE FENCING® trademark was first used in interstate commerce at least as early as August 1976.

21.     IFI is also the owner of the U.S. Trademark Registration No. 1,600,470 for the trademark INVISIBLE FENCE (the "'470 Registration") for use in connection with electronic pet containment systems and components thereof, a copy of such registration being attached hereto as **Exhibit B**. The application for such trademark was filed on May 12, 1989, and the

registration issued on June 12, 1990. Affidavits under Sections 8 and 15 of the Lanham Act have been filed with, and accepted by, the United States Patent and Trademark Office, and such registration is incontestable under 15 U.S.C. § 1065. As set forth in the attached **Exhibit B**, the INVISIBLE FENCE® trademark was first used in interstate commerce at least as early as January 1983.

22.    IFI is also the owner of the U.S. Trademark Registration No. 1,765,230 for the trademark INVISIBLE (the "'230 Registration") for use in connection with electronic pet containment systems and components thereof, a copy of such registration being attached hereto as **Exhibit C**. The application for such trademark was filed on December 9, 1991, and the registration issued on April 13, 1993. Affidavits under Sections 8 and 15 of the Lanham Act have been filed with, and accepted by, the United States Patent and Trademark Office, and such registration is incontestable under 15 U.S.C. § 1065. As set forth in the attached **Exhibit C**, the INVISIBLE® trademark was first used in interstate commerce at least as early as July 15, 1992.

23.    The IFI Trademarks and other variations of the mark featuring the terms INVISIBLE and FENCE have been continuously used since the 1970s for a variety of pet containment products. (Together with the common law rights in the IFI Trademarks and other variations of the marks featuring the terms INVISIBLE and FENCE, the '021 Registration, the '470 Registration, the '230 Registration, and associated common law rights are referred to as the "INVISIBLE FENCE Marks").

24.    IFI actively polices its INVISIBLE FENCE Marks, including by submitting takedown requests on social media and online marketplaces and by sending cease-and-desist letters to parties using the INVISIBLE FENCE Marks without authorization. Though these enforcement efforts usually achieve favorable results, IFI has occasionally had to enforce its

rights in the INVISIBLE FENCE Marks via litigation, as it successfully did through lawsuits filed in 2009, 2011, and 2017.

**IFI's Established and Storied Brand**

25.     IFI's earliest predecessor in interest (together with IFI and all other predecessors in interest, "IFI") was founded in 1976 by John Purtell after he acquired the lone patent encompassing electronic pet containment technology featuring an in-ground transmission wire. For nearly fifteen years, consumers only purchased IFI's electronic pet containment systems sold exclusively under the INVISIBLE FENCE Marks. IFI was the sole source of such systems in the marketplace until its patent expired in 1990. As the company offering the pioneer product, IFI cemented its place as the preeminent pet containment system brand.

26.     Despite losing its patent monopoly in 1990, IFI continued to innovate in the pet containment space. As technology advanced, IFI responded by improving the quality and performance of its original products and by developing new products. Today, IFI's line of "Boundary Plus®" products embodies the most current technology in the field, including a mobile application, in-ground wired systems, and GPS-based wireless pet containment systems (the latter since at least 2014). IFI's attention to innovation has not only preserved the relevance of IFI's brand but has also caused it to prosper despite the entrance of new competitors.

27.     Starting in 1982, IFI established a dealer network that spread rapidly and widely. By the early 1990s, the network covered the entire United States. Eventually this network of dealers expanded worldwide to over 250 dealerships across seven countries. IFI's dealership network was, and remains, the exclusive avenue for purchasing IFI products and services, including pet containment systems and associated services like expert consultation, installation, training, and maintenance.

28.     IFI's dealer network disseminated the IFI brand across the nation through diversified marketing efforts, including personal contacts and community involvement. Physical characteristics like the IFI brand imagery on its dealer vehicles and millions of yard and perimeter flags prominently displaying the INVISIBLE FENCE Marks (examples of which are pictured below) have propagated the IFI brand locally throughout the United States (and beyond). As a result, almost anywhere pets are found in America, there are households and individuals using and trusting IFI's products and services.






29.     IFI has also gained widespread recognition through IFI dealers' investing in marketing with respect to television, radio, billboard, newspaper, magazine, direct mail, coupon mailers, home and public events, promotional items, and apparel that all prominently display or otherwise use the INVISIBLE FENCE Marks. These marketing efforts have been stimulated by

IFI's incentive programs for dealers who regularly run advertising that features the INVISIBLE FENCE Marks and official IFI promotional materials.

30. Moreover, IFI conducts a *pro bono* initiative in North America under the name Project Breathe using the INVISIBLE FENCE Marks. Project Breathe donates specially designed pet oxygen masks to fire departments across the continent, each mask conspicuously bearing the INVISIBLE FENCE Marks. Project Breathe not only equips firefighters with pet-saving resources, but also has the secondary effect of driving awareness and media coverage of the IFI brand. To date, more than 25,000 IFI-branded oxygen masks have been distributed through IFI's Project Breathe.

31. IFI was acquired by the well-known Tennessee-based company Radio Systems Corporation ("Radio Systems") in 2006. Following the acquisition, IFI moved its headquarters to Knoxville, Tennessee, where it established a reputation for local involvement and became the leading name in pet containment systems in Tennessee. For example, a "Project Breathe Week" is celebrated in Tennessee every February. Radio Systems was founded by Randy Boyd ("Boyd"), a widely recognized Tennessean, who currently serves as the President of the University of Tennessee System and formerly served as the Commissioner of Economic Development for the State of Tennessee under former Governor Bill Haslam. In 2018, Boyd was a Tennessee gubernatorial candidate. Boyd's state-wide personal fame elevates awareness of the organizations with which he is associated, including IFI. As a result, since its acquisition by Radio Systems, IFI's brand and the INVISIBLE FENCE Marks have become famous amongst Tennesseans.

32. IFI has been the subject of nationwide press coverage and has received multiple national awards for its innovative pet containment products and services. For example,

Consumers Digest awarded IFI's "Boundary Plus® Technology" a Best Buy award in 2017 and 2018. Further, many veterinarians and well-known animal welfare groups, including the American Society for the Prevention of Cruelty to Animals and the International Association of Canine Professionals, have recommended or endorsed IFI products to their patients, members, and/or supporters.

33.     Radio Systems actively invests substantial time, effort, and money into protecting, preserving, and promoting the IFI brand, and specifically its INVISIBLE FENCE Marks. As a result, the IFI brand is flourishing in Tennessee, across the nation, and around the world.

34.     IFI's brand and its INVISIBLE FENCE Marks are famous among the general consuming public nationwide.

**Halo's Unauthorized Use of the INVISIBLE FENCE Marks**

35.     The Halo Collar is a competing GPS-based containment system produced, offered, and sold by PAWS.

36.     On information and belief, PAWS initially offered the Halo Collar for sale in or about 2020, long after IFI secured its rights in the INVISIBLE FENCE Marks. Since then, PAWS has sold and advertised Halo Collar products, and continues to offer and advertise Halo Collar products, as a "next generation" alternative to IFI's pet containment products:



https://adstransparency.google.com/advertiser/AR06050213158772015105/creative/CR0724197
6251659845633?region=US (captured on Oct. 17, 2023).




Sponsored

halocollar.com
https://www.halocollar.com ⋮

**Beyond the Invisible Fence® - Safest Invisible Dog Fence**

The next generation of portable dog **fences**, wireless **fences**, GPS tracking and
training. Have you paid $200, $300 or **more** each year to fix your **invisible** dog
**fence**? Get Halo. Only All-In-One Collar. GPS Tracking. Real-time tracking. Smart...

**See How Halo Works**
No More Wires Set up a Fence Anywhere

**Shop Halo Collar 3**
Wireless Dog Fence GPS Fence

https://www.google.com (captured on Oct. 17, 2023).

37.     Not content to promote itself as the next-generation pet containment system,
however, PAWS has recently appropriated IFI's identity, going so far as to call itself "Invisible
Fence® of the Future":

**Invisible Fence® of the Future | Best-In-Breed GPS Tech**
https://www.halocollar.com ▾
The next generation of portable **dog fences**, wireless **fences**, GPS tracking and training. Are you
sick of spending hundreds of dollars on in-ground **fence** repairs? Get Halo.
You have visited halocollar.com once in last 7 days.

Wireless Dog Collars                    Wireless Dog Perimeter

Invisible Fence for Dogs                New Wireless Dog Fence

https://www.bing.com (captured on Oct.17, 2023).



Sponsored

Halo Collar
https://www.halocollar.com ⋮

**Invisible Fence® of the Future - Ditch the Wires**

The next generation of portable dog **fences**, wireless **fences**, GPS tracking and training. Have
you paid $200, $300 or more each year to fix your **invisible** dog **fence**? Get Halo. Real-time
tracking. Only All-In-One Collar. Smart **Fencing**. Styles: Ivory, Sunburst, Orchid.

https://www.google.com/ (captured on Sept. 21, 2023).

38. Halo has committed and continues to commit these and similar infringing uses (collectively, the "Infringing Uses") in its online advertisements that run on at least www.google.com, www.facebook.com, www.instagram.com, www.yahoo.com, www.bing.com, www.duckduckgo.com, and www.aol.com.

39. Halo's Infringing Uses cause confusion or are likely to cause confusion as to the source of the goods and/or services associated with IFI's INVISIBLE FENCE Marks. For example, Halo refers to the Halo Collar products as "the Invisible Fence® of the Future," creating the false impression that Halo Collar products originate from IFI or are otherwise connected to, affiliated or associated with, or sponsored, endorsed, or authorized by IFI. *See supra* Para. 37; *see infra* Para. 45.

40. IFI's products and the Halo Collar products are similar to and competitive with one another. Each are a pet containment system and at least one of IFI's products utilizes a GPS-based wireless dog collar receiver like the Halo Collar products. Each target consumers who choose pet containment systems costing hundreds of dollars. Each are advertised through similar marketing channels, including online advertisements. Moreover, IFI's INVISIBLE FENCE Marks, as explained above, are well known to consumers of pet containment systems, and the Halo Collar, since around its release, has been marketed as an alternative to IFI's products and used the INVISIBLE FENCE Marks in advertisements. This indicates Halo intentionally chose to use IFI's INVISIBLE FENCE Marks in its advertising.

41. Thus, due to the similarity and competitive nature of the goods provided by Halo and IFI in connection with the marks, and given Halo's Infringing Uses of the INVISIBLE FENCE Marks in interstate commerce, consumers are highly likely to be confused or mistaken

as to the source of the goods associated with the INVISIBLE FENCE Marks, or as to the affiliation, connection, or association the Halo Collar products with IFI.

**Individual Liability of PAWS's Officers**

42.     Defendants Ehrman and Millan are both identified on the Halo website as a "Founding Partner," and both are referred to in news articles as "Co-Founders." *See* https://www.halocollar.com/about/; https://www.prnewswire.com/news-releases/introducing-the-new-halo-collar-the-go-anywhere-wireless-fence-301409921.html.

43.     Ehrman is also identified as "Managing Partner" on the Halo website and, on information and belief, actively manages, directs, controls, participates in, and is a moving force behind the design, production, advertising, and sale of the Halo Collar products. *See* https://www.halocollar.com/about/. On information and belief, Ehrman is a corporate officer of PAWS and has authority to approve, reject, and revise advertisements of the Halo Collar products.

44.     On information and belief, Ehrman was and is a moving force behind the Infringing Uses. For example, Ehrman directed and/or authorized Halo's infringing use of the INVISIBLE FENCE Marks in online advertisements in interstate commerce, and thus is personally liable for such infringement. *See infra* Para. 65.

45.     On information and belief, Millan was an active participant in designing, developing, promoting, and advertising the Halo Collar products and associated training protocol. *See* https://www.halocollar.com/about/; *see also* https://www.prnewswire.com/news-releases/introducing-the-new-halo-collar-the-go-anywhere-wireless-fence-301409921.html.    On information and belief, Millan was and is personally involved in fundraising for PAWS and is a corporate officer of PAWS. *See* https://dallasinnovates.com/raising-the-woof-plano-based-halo-

completes-series-b-with-400m-valuation/. Moreover, Millan's first and last name, "Cesar Millan," is explicitly used in a number of the Infringing Uses as exemplified below:



https://duckduckgo.com/ (captured on Sept. 26, 2023).

46. On information and belief, Millan directs, controls, ratifies, and/or participates in the Infringing Uses, or at least the Infringing Uses that contain his name, "Cesar Millan." For example, Millan directed and/or authorized Halo's online advertisements in interstate commerce that use his name, "Cesar Millan," and that infringe the INVISIBLE FENCE Marks, and thus is personally liable for such infringement.

**Halo's Unfair Competition**

47. Halo's advertisements and website make false, deceptive, and misleading claims about IFI's products and services (collectively, the "False and Misleading Claims"). For example, below is a chart from Halo's website comparing IFI's brand and products with the Halo Collar products (the "Chart"):

Invisible Fence® vs. Halo GPS Wireless Dog Fence

| | Invisible Fence® | halo |
|---|:---:|:---:|
| No Installation Required | ✕ | ✓ |
| Location tracking | N/A | GPS/GNSS |
| Activity Tracking | ✕ | ✓ |
| Change Boundaries Anytime | ✕ | ✓ |
| Multiple Fences | ✕ | ✓ |
| Tracking | ✕ | ✓ |
| Portable | ✕ | ✓ |
| Training | ✕ | ✓ |
| Feedback Options | Shock | Sound, Vibration, Static |
| Technology Updates | ✕ | ✓ |

https://www.halocollar.com/halo-vs-invisible-fence (captured on Oct. 13, 2023).

48.     IFI's and Halo's products are direct competitors with one another, and Halo's False and Misleading Claims, malign, misrepresent, and mischaracterize IFI's products. For example, Halo's Chart falsely, or at least misleadingly, communicates that IFI's products only provide "Shock" feedback, compared to the "Sound, Vibration, Static" feedback modalities available in the Halo Collar. In truth, IFI offers an array of products under its "Boundary Plus®" line that provide audible, vibration, and *static* feedback.

49.     Moreover, the terms "Shock" and "Static" refer to the exact same type of corrective feedback—namely, electrical stimulus transferred from probes on the collar to the pet's skin. This is not generally known by consumers, as exemplified in the Amazon review

below, and thus, Halo's Chart, which contrasts "Shock" with "Static," is literally false or, alternatively, at least misleading.

 Megan Murphy

★★☆☆☆ **GPS Not Accurate Enough Technology for Small Yard**
Reviewed in the United States on September 18, 2023
Size: Small | Color: Graphite

Pros:
1. Cool app with nice training videos
2. GPS function so you can locate your dog no matter where they are.

Cons:
1. Battery lasts less than 24 hours so if you lose your dog you only have one day to find them.
2. Halo advertises that the maximum prevention feedback is "static" and not a shock. I tested it on my own hand. I definitely call it a shock. My dog yelped and was scared to death at a level 3 out of 15.
3. The biggest con is that GPS, in my opinion, is not nearly accurate enough for this task, especially in a small yard.

My yard is 1/4 acre. I made the fence 15 feet outside of my yard since I have two friendly neighbors. There are three feedback settings on the collar, with progressively more intense feedback. I had warning feedback set to beeping, which means as the dog approaches a boundary the collar beeps. I had boundary feedback set to vibrate, so as my dog reached a boundary the collar vibrated. I had emergency feedback set to static (again, I call it shock), so once my dog crossed a boundary she received a shock. On numerous occasions, the beeping would be delayed. Sometimes the collar would provide vibration or static before the beeping happened. One time the beeping worked well, my dog heard it and turned back towards the house, but then received vibrations and static when she was 15 feet within the boundary I created. So my dog was yelping in pain after doing exactly what she should have done and while being 15 feet within the boundary. From what I can see, GPS isn't accurate enough, and doesn't refresh or respond quickly enough, for this task.

One final complaint: I bought a Halo 2 collar just before Halo 3 came out. Rather than offer a free upgrade or software update, I was told I had to spend another $600 to get the latest and greatest, one month after I dropped the same amount of money on the previous version.

I'm 90% sure my next step is to call Invisible Fence.

https://www.amazon.com/gp/customer-reviews/RH62VB0HTUGDF/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B0CGF3YLH3

(Captured on Oct. 17, 2023).

50.     Since its initial offering, the Halo Collar has been sharply criticized in online consumer reviews. For example, consumers gave the Halo Collar an overall average rating of 2.28 out of 5 stars on its Better Business Bureau profile and over 75 one-star reviews on its Trustpilot profile (35% of the total reviews published). *See* https://www.bbb.org/us/tx/plano/profile/dog-training/halo-collar-0875-91126956; *see also* https://www.trustpilot.com/review/halocollar.com?stars=1. Some reviewers, as shown below, are so dissatisfied with the Halo Collar, they even express animosity toward Halo's officers:



**Tom Ward**
2 reviews ◎ US

★★☆☆☆        3 days ago

**I would not recommend the Halo Collar**

I would not recommend the Halo Collar. Most of the time it works well and I'm sure Cesar Millan is taking in lots of money. But months after my dog has gotten used to it, sporadically it says she is outside her home fence, when she is actually well inside the fence. Sometimes she is even inside the house, when the GPS is wrong and shocks her. I would like to stick this Halo Collar up Cesar Millan's, you know what, and turn the shock level up to full power.

Date of experience: October 22, 2023

https://www.trustpilot.com/reviews/65354f28d05205f188e4b7dc (captured on Oct. 25, 2023).

51.     Other examples of Halo's False and Misleading Claims are found in its television advertisement that, on information and belief, started airing in or around August of 2021 (the "TV Ad"). In the TV Ad, and separately on Halo's website (the "Ad Copy"), Halo falsely, deceptively, and misleadingly represents that "Invisible Fence® is an outdated technology." Screenshot examples of the TV Ad and the Ad Copy are shown below:



INVISIBLE DOG FENCE VS HALO SMART DOG COLLAR WIRELESS GPS FENCE W/ IN-APP TRAINING BY CESAR MILLAN

https://www.youtube.com/watch?v=T2z5qf_TDZY (captured on Oct. 17, 2023).



INVISIBLE DOG FENCE VS HALO SMART DOG COLLAR WIRELESS GPS FENCE W/ IN-APP TRAINING BY CESAR MILLAN

https://www.youtube.com/watch?v=T2z5qf_TDZY (captured on Oct. 17, 2023).



https://www.halocollar.com/halo-vs-invisible-fence (captured on Oct. 17, 2023).

52. The TV Ad prominently displays IFI perimeter flags bearing the INVISIBLE FENCE Marks, leaving no doubt that IFI is the party Halo falsely, or at least misleadingly, refers to as being limited to the "outdated technology" of buried-wire pet containment systems. IFI's perimeter flags and INVISIBLE FENCE Marks are used in connection with both IFI's buried-

wire and GPS-based wireless containment systems. The immediate and natural interpretation of the TV Ad falsely communicates to consumers that IFI's products are limited to buried-wire systems, which is simply not true.

53.     IFI's and Halo's products directly compete with one another. The TV Ad and Ad Copy falsely, or at least misleadingly, communicate that IFI products only use "outdated technology," and more specifically that IFI products do not utilize GPS. In truth, IFI has produced and sold—since at least 2014—the Boundary Plus® GPS Wireless System, which utilizes a GPS-based wireless dog collar receiver. In addition, the in-ground wired pet containment systems that IFI offers employ modern technology, including mobile application capabilities.

54.     Halo's misrepresentations are deliberate and willful, because it is aware that IFI has long offered a GPS-based containment system. Indeed, Halo acknowledges on its website— separate and apart from the content comparing the Halo Collar products to IFI's products—that "[s]ome of the first" GPS-based containment systems were "created by Invisible Fence." *See* https://www.halocollar.com/halo-gps-fence-vs-spoton.

55.     On information and belief, Halo knowingly and willfully continues to market Halo Collar products via the website www.halocollar.com and other advertisements in interstate commerce using the False and Misleading Claims.

56.     Halo's False and Misleading Claims include objective statements that are literally false and not mere puffery. For example, the Chart communicates that IFI's products only provide "Shock" feedback. This is literally false because the overwhelming majority of IFI's solutions offered and sold for at least the last several years provide audible and vibration feedback as well as static. As an additional example, the TV Ad and Ad Copy suggest that IFI's

products are limited to buried-wire systems, which is literally false at least because IFI produces a GPS-based wireless containment system.

57. In addition, or in the alternative, the False and Misleading Claims are misleading because they mischaracterize the state of IFI's technology and the capabilities of IFI's products to consumers.

58. The False and Misleading Claims tend to deceive consumers and investors and to deceive a substantial segment of IFI's audience. Because these statements are made prominently on Halo's website and advertisements, an appreciable number of consumers and investors are likely to believe the False and Misleading Claims. The False and Misleading Claims are literally false and thus deceive consumers. The False and Misleading Claims are also misleading, and a substantial portion of the intended audience of consumer have been deceived. For example, the Chart that contrasts "Shock" and "Static" has deceived consumers who saw the advertisements and purchased the Halo Collar. *See supra* Para. 49.

59. Moreover, the False and Misleading Claims are material to consumer purchasing decisions because they concern inherent qualities or characteristics of IFI's products, namely that IFI's products use "outdated technology," that IFI's products only provide "Shock" feedback, or that IFI's "Shock" feedback is somehow different and inferior to the Halo Collar products' "Static" feedback.

60. Halo's False and Misleading Claims harm IFI through loss of goodwill and harm the public by misrepresenting the nature of IFI's products. The False and Misleading Claims are factual in nature, are false and misleading, and therefore constitute false advertising. These false and misleading statements mislead consumers and influence their purchasing decisions, to the detriment of IFI's goodwill.

61.     Halo has been unjustly enriched by maintaining the falsehoods in the False and Misleading Claims. Through these falsehoods prominently displayed on its website and advertisements, Halo is gaining profits and goodwill that, in fairness, do not belong to it. And, because IFI is a direct competitor of Halo, IFI is losing goodwill from Halo's False and Misleading claims.

62.     Further, Halo's advertisements with Infringing Uses are displayed in interstate commerce and use the INVISIBLE FENCE Marks in a misleading way to deceive consumers as to the origin, sponsorship, or approval of products sold and/or products offered by Halo and to "pass off" the Halo Collar products as being affiliated, connected, or associated with IFI.

63.     Halo's Infringing Uses of the INVISIBLE FENCE Marks in connection with its products is a false designation of origin and a false or misleading description and representation of fact which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Halo with IFI.

### IFI's Communications With Halo

64.     On September 22, 2020, IFI sent a cease-and-desist letter to PAWS notifying it that IFI has the exclusive right to use the INVISIBLE FENCE Marks. A copy of the letter is attached hereto as **Exhibit D**. IFI informed PAWS that its unauthorized uses of the INVISIBLE FENCE Marks constituted trademark infringement. To protect the tremendous goodwill associated with the INVISIBLE FENCE Marks and IFI's exclusive trademark rights, IFI demanded that PAWS cease its unauthorized and infringing uses.

65.     On October 5, 2020, Ehrman, personally, and IFI, through counsel, spoke on the phone. During the phone call, Ehrman, as memorialized in an email from Ehrman to IFI attached hereto as **Exhibit E**, pledged that PAWS would amend its online advertisements and "honor the

[INVISBLE FENCE Marks] going forward as discussed." *See* Ex. E. Subsequently, and to IFI's knowledge, Halo ceased using the INVISIBLE FENCE Marks as trademarks in its advertising content.

66.     But Ehrman's initial commitment to "honor" IFI's longstanding trademark rights proved hollow, and in August of 2022, Halo resumed its unauthorized and Infringing Uses of INVISBLE FENCE Marks. IFI promptly sent another cease-and-desist letter to PAWS on August 19, 2022, reiterating its trademark infringement concerns and raising new issues of false advertising and unfair competition. A copy of the letter is attached hereto as **Exhibit F.**

67.     On August 26, 2022, PAWS sent a response, via counsel, denying all allegations of wrongdoing by IFI, but admitting that several of the advertising claims IFI had identified had been amended "in the normal course of business." A copy of the letter is attached hereto as **Exhibit G**.

68.     Thereafter, IFI persistently identified and requested removal of Halo's advertisements that infringed the INVISIBLE FENCE Marks or made false or misleading claims. IFI exhibited great patience with Halo and regularly sent additional letters between March 23, 2023, and August 8, 2023, regarding Halo's advertisements that infringed the INVISIBLE FENCE Marks and/or made false or unverified claims about the Halo Collar products and IFI's products. Each letter is attached, respectively, as **Exhibits H, I, J, K, L**. Of these additional letters, Halo only responded to the first, dated March 23, 2023, in which it denied all wrongdoing. A copy of Halo's response to that letter, dated April 10, 2023, is attached hereto as **Exhibit M**.

69.     In August 2023, IFI determined that Halo's infringing misconduct had worsened and become more acute. For example, Halo had begun advertising Halo Collar products as the

"Invisible Fence® of the Future" without authorization and despite the numerous requests by IFI to cease its infringing use of the INVISIBLE FENCE Marks.

70.     Halo is still using and, on information and belief, intends to continue using, advertisements that infringe the INVISIBLE FENCE Marks and/or make false or misleading claims about the Halo Collar products and IFI's products. Halo's actions constitute willful infringement of IFI's rights in the INVISIBLE FENCE Marks and violate unfair competition laws. Such conduct by Halo has irreparably harmed, and continues to irreparably harm, IFI and dilutes the distinctive quality of the INVISIBLE FENCE Marks.

71.     On information and belief and after a reasonable opportunity for further investigation or discovery, IFI is likely to have further evidentiary support of Halo's false and misleading advertising, unfair competition, and willful infringement and dilution of the INVISIBLE FENCE Marks.

## COUNT I

### Federal Trademark Infringement, 15 U.S.C. § 1114

72.     IFI repeats and realleges each preceding paragraph as if fully set forth herein.

73.     IFI owns the INVISIBLE FENCE Marks and the associated federal registrations thereof. IFI has used the trademark INVISIBLE FENCE® in connection with pet containment systems since as early as 1983 and has used other variations of the Mark featuring the terms INVISIBLE and FENCE with pet containment systems since at least 1976. The INVISIBLE FENCE Marks are distinctive of the goods and services of IFI and are incontestable under 15 U.S.C. § 1065.

74.     The above-cited acts by Defendants constitute trademark infringement of the INVISIBLE FENCE Marks in violation of 15 U.S.C. § 1114.

75. Defendants' Infringing Uses of the INVISIBLE FENCE Marks in connection with competing products are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with IFI, or as to the origin, sponsorship, or approval of Defendants' products or commercial activities by IFI.

76. Defendants' Infringing Uses of the INVISIBLE FENCE Marks have caused and continue to cause irreparable harm to IFI, for which IFI has no adequate remedy at law, thereby entitling IFI to injunctive relief under 15 U.S.C. § 1116.

77. By reason of Defendants' actions alleged herein, IFI has suffered irreparable injury to its goodwill and is being deprived of the exclusive control over its renowned trademarks and brand name.

78. Defendants' acts of federal trademark infringement entitle IFI to recover its actual damages, Defendants' profits, as well as costs and reasonable attorney fees under 15 U.S.C. § 1117.

79. IFI has requested that Defendants cease infringing its trademark rights and has given Defendants actual notice of IFI's prior use and registration of the INVISIBLE FENCE Marks, but Defendants continue to engage in such misconduct, thereby demonstrating the willful nature of Defendants' infringement.

80. IFI has no adequate remedy at law inasmuch as money damages alone would not compensate IFI for being deprived of the exclusive control of its trademarks and the erosion of its established goodwill and business reputation resulting from Defendants' infringement of the INVISIBLE FENCE Marks. Unless this Court acts to enjoin Defendants under 15 U.S.C. § 1116, their acts herein complained of will continue causing irreparable damage to IFI's trademark rights, goodwill, and reputation.

81.    The intentional and persistent nature of Defendants' unlawful acts renders this an exceptional case, entitling IFI to an award of attorneys' fees under 15 U.S.C. § 1117(a).

## COUNT II

### Common Law Trademark Infringement

82.    IFI repeats and realleges each preceding paragraph as if fully set forth herein.

83.    The Court has jurisdiction over this claim pursuant to 27 U.S.C. § 1367.

84.    IFI owns the INVISIBLE FENCE Marks. IFI has used the trademark INVISIBLE FENCE® in connection with pet containment systems since as early as 1983 and has used other variations of the Mark featuring the terms INVISIBLE and FENCE with pet containment systems since at least 1976. The INVISIBLE FENCE Marks are inherently distinctive and/or acquired secondary meaning long ago, making them valid trademarks.

85.    Defendants' unauthorized use of the INVISIBLE FENCE Marks constitutes trademark infringement under Tennessee common law.

86.    Defendants' Infringing Uses of the INVISIBLE FENCE Marks in connection with competing products are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with IFI, or as to the origin, sponsorship, or approval of Defendants' products or commercial activities by IFI.

87.    Defendants' Infringing Uses of the INVISIBLE FENCE Marks have caused and will continue to cause damage the business reputation of IFI and erode the goodwill in the INVISIBLE FENCE Marks, for which IFI has no adequate remedy at law.

88.    By reason of Defendants' actions alleged herein, IFI has suffered irreparable injury to its goodwill.

89.     IFI has requested that Defendants cease and desist from infringing its trademarks and has given Defendants actual notice of IFI's prior use of the INVISIBLE FENCE Marks, but Defendants continue to engage in such misconduct, thereby demonstrating the willful nature of Defendants' infringement.

90.     IFI has no adequate remedy at law inasmuch as money damages alone would not compensate IFI for being deprived of the exclusive control of its trademarks and the erosion of its established goodwill and business reputation resulting from Defendants' infringement of the INVISIBLE FENCE Marks. Unless this Court acts to enjoin Defendants, their acts herein complained of will continue causing irreparable damage to IFI's trademark rights, goodwill, and reputation.

## COUNT III

### False Designation of Origin (Passing Off), 15 U.S.C. § 1125(a)

91.     IFI repeats and realleges each preceding paragraph as if fully set forth herein.

92.     As set forth above, Defendants continue to use the INVISIBLE FENCE Marks, or marks confusingly similar thereto, in connection with its sale, promotion, and advertisement of pet containment systems, including the Halo Collar products. Moreover, on information and belief, Defendants are familiar with IFI and the tremendous goodwill associated with its INVISIBLE FENCE Marks, and have published advertisements referring to Defendants' own products using the INVISIBLE FENCE Marks, including but not limited to "Invisible Fence®," thereby palming off Defendants' goods as those of IFI, all to the great damage of IFI.

93.     Defendants' unauthorized Infringing Uses of the IFI trademarks, and marks confusingly similar thereto, have the effect of misrepresenting the origin of Defendants' products, including the Halo Collar, and are likely to cause confusion among consumers.

94.     Defendants' unauthorized Infringing Uses of the INVISIBLE FENCE Marks constitute false designations of origin, which are likely to cause confusion, to cause mistake, and to deceive the public and potential customers as to the affiliation, connection, or association of IFI with Defendants and as to the origin, sponsorship, or approval of Defendants' products or commercial activities by IFI.

95.     Defendants' misconduct is in violation of 15 U.S.C. § 1125(a), in that Defendants have used in connection with their goods and services a false designation of origin, a false or misleading description and representation of fact which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of Defendants with Plaintiff and as to the origin, sponsorship, and approval of Defendants' goods and commercial activities by Plaintiff.

96.     IFI has repeatedly requested that Defendants cease and desist from their unauthorized uses of its trademarks and has given Defendants actual notice of IFI's superior rights in the INVISIBLE FENCE Marks, but Defendants continue to engage in such misconduct and Infringing Uses, thereby demonstrating the willful nature of Defendant's passing off.

97.     Defendants' acts of unfair competition continue to cause irreparable harm to IFI, for which IFI has no adequate remedy at law.

98.     By reason of Defendants' actions alleged herein, IFI has suffered irreparable injury to its goodwill.

99.     IFI is entitled to recover its actual damages, Defendants' profits, as well as costs and reasonable attorney fees under 15 U.S.C. § 1117.

100.    Defendants' failure to cease its wrongful activities after receiving notice thereof evidences intent on the part of Defendants to continue the misconduct complained about herein unless restrained and enjoined.

101.    The intentional and persistent nature of Defendants' unlawful acts renders this an "exceptional case," entitling IFI to an award of attorneys' fees under 15 U.S.C. § 1117(a).

## COUNT IV

## Federal Dilution, 15 U.S.C. § 1125(c)

102.    IFI repeats and realleges each preceding paragraph as if fully set forth herein.

103.    The INVISIBLE FENCE Marks are strong and distinctive and have long been used, as alleged above, in connection with IFI's goods and services, and have long been the subject of substantial advertising and promotion, have been used and advertised extensively throughout the United States, are widely recognized by the general consuming public and those in the trade. IFI owns incontestable federal registrations for the INVISIBLE FENCE Marks, as alleged above.

104.    IFI has used the trademark INVISIBLE FENCE® in connection with pet containment systems since as early as 1983 and has used other variations of the Mark featuring the terms INVISIBLE and FENCE with pet containment systems since at least 1976.

105.    IFI maintains a widespread dealer network throughout the United States and the world, and IFI has achieved general popularity in the United States due, in part, to IFI dealers' investing in marketing with respect to television, radio, billboard, newspaper, magazine, direct mail, coupon mailers, home and public events, promotional items, and apparel that all prominently display or otherwise use the INVISIBLE FENCE Marks.

106.    Moreover, IFI conducts *pro bono* initiatives that prominently position the INVISIBLE FENCE Marks on a national scale, such as Project Breathe.

107.    IFI has been the subject of nationwide press coverage and has received multiple national awards for its innovative pet containment systems. For example, Consumers Digest awarded IFI's "Boundary Plus® Technology" a Best Buy award in 2017 and 2018.

108.    For at least these reasons, the INVISIBLE FENCE Marks are recognized by the general consuming public of the United States as a designation of source for the goods of IFI and are therefore famous marks. The acts of Defendants alleged herein were commenced after IFI's marks became famous.

109.    Defendants have made use of the INVISIBLE FENCE Marks and/or confusingly similar variations thereof, as a mark or trade name in connection with goods and/or services which Defendants have sold and/or transported in United States interstate commerce. Defendants' use of the INVISIBLE FENCE Marks, and/or confusingly similar variations thereof, as a mark or trade name creates a likelihood of association with IFI's famous INVISIBLE FENCE Marks arising from the similarity to IFI's famous marks.

110.    Defendant's actions are in violation of the 15 U.S.C. § 1125(c) in that they are likely to cause dilution by blurring by impairing the distinctiveness of IFI's famous marks, all to the irreparable injury and damage of IFI.

111.    In addition, or in the alternative, Defendants' actions also violate 15 U.S.C. § 1125(c) in that they are likely to cause dilution by tarnishment by harming the reputation of IFI's famous INVISIBLE FENCE Marks. Defendants are advertising and selling a sharply criticized and disfavored pet containment system product using the famous INVISIBLE FENCE Marks, thereby binding IFI's goodwill to Defendants' inferior and ineffective products.

112. On information and belief, Defendants committed these acts willfully and with intent to create an association with IFI's famous INVISIBLE FENCE Marks; Defendants willfully intended to trade on the recognition of IFI's famous INVISIBLE FENCE Marks; and Defendant willfully intended to harm the reputation of IFI's famous INVISIBLE FENCE Marks.

113. Defendants' acts of dilution have damaged IFI, and there is no remedy at law adequate to compensate IFI for those injuries, at least because IFI's impaired distinctiveness in its trademarks and the eroded goodwill and reputation resulting from the dilution is ongoing and cannot be specifically calculated. Defendants' failure to cease their misconduct after receiving notice thereof evidences their willful intent to continue engaging in the acts complained of herein unless restrained and enjoined.

114. The intentional and persistent nature of Defendants' unlawful acts renders this an "exceptional case," entitling IFI to an award of attorneys' fees under 15 U.S.C. § 1117(a).

## COUNT V

### State Dilution, Tenn. Code. Ann. § 47-25-513

115. IFI repeats and realleges each preceding paragraph as if fully set forth herein.

116. The Court has jurisdiction over this claim pursuant to 27 U.S.C. § 1367.

117. The INVISIBLE FENCE Marks are recognized by the general consuming public of the State of Tennessee as a designation of source for the goods of IFI and are therefore famous marks within the state. The acts of the Defendants alleged herein were commenced after IFI's marks became famous in Tennessee.

118. Defendants' unauthorized use of the INVISIBLE FENCE Marks violates Tennessee Code Annotated § 47-25-513 in that Defendants are likely to cause dilution by

Case 3:23-cv-00403-JRG-JEM   Document 1   Filed 11/09/23   Page 31 of 35   PageID #: 31

blurring by impairing the distinctiveness of IFI's famous marks, all to the irreparable injury and damage of IFI.

119.     In addition, or in the alternative, Defendants' actions also violate Tennessee Code Annotated § 47-25-513 in that they are likely to cause dilution by tarnishment by harming the reputation of IFI's famous INVISIBLE FENCE Marks. Defendants are advertising and selling a sharply criticized and disfavored pet containment system using the famous INVISIBLE FENCE Marks, thereby binding IFI's goodwill to Defendants' own inferior and ineffective products.

120.     On information and belief, Defendants committed these acts willfully and with intent to create an association with IFI's famous INVISIBLE FENCE Marks; Defendants willfully intended to trade on the recognition of IFI's famous INVISIBLE FENCE Marks; and Defendants willfully intended to harm the reputation of IFI's famous INVISIBLE FENCE Marks.

121.     Defendants' acts of dilution have damaged IFI, and there is no remedy at law adequate to compensate IFI for those injuries, at least because IFI's impaired distinctiveness in its trademarks and the eroded goodwill and reputation resulting from the dilution is ongoing and cannot be specifically calculated. Defendants' failure to cease their misconduct after receiving notice thereof evidences their willful intent to continue engaging in the acts complained of herein unless restrained and enjoined.

## COUNT VI

## False Advertising, 15 U.S.C. § 1125(a)

122.     IFI repeats and realleges each preceding paragraph as if fully set forth herein.

123.     Defendants' advertisements and website comprise False and Misleading Claims. These statements, conspicuously displayed on Defendants' website are made in United States

commerce, are literally false and therefore constitute false statements of fact in advertising and promotion in violation of the Lanham Act, 5 U.S.C. § 1125(a).

124. Defendants' false and misleading representations of fact tend to actually deceive consumers, including prospective purchasers of IFI's pet containment solutions. Consumers are likely to believe that statements made on Defendants' website and advertisements are literally true. For example, consumers believe that "Static" feedback is somehow different than and preferable to "Shock" feedback when in truth both are the same. IFI's GPS-based pet containment system and Defendants' GPS-based Halo Collar products are marketed and offered to the same customers. Thus, a substantial portion of IFI's own actual and potential customers are likely to be deceived by Defendants' misconduct.

125. On information and belief, Defendants have intentionally, deliberately, and willfully displayed the False and Misleading Claims on their website and advertisements.

126. Defendants' literally false assertions are material in that such claims are likely to influence the purchasing decisions of consumers, thereby making consumers more likely to purchase Defendants' Halo Collar products over one of IFI's pet containment systems.

127. Defendants' false assertions are likely to injure IFI's brand and goodwill. Consumers have come to recognize IFI as a supplier of high-quality pet containment systems. IFI has developed considerable goodwill in the INVISIBLE FENCE Marks. Defendants' misconduct has degraded and will continue to degrade IFI's goodwill. These same consumers, when exposed to Defendants' False and Misleading Claims, for example, are less likely to purchase IFI's pet containment system over Defendants' Halo Collar products.

128. The false advertising caused by Defendants is in violation of 15 U.S.C. § 1125(a).

129.    Pursuant to 15 U.S.C. § 1117, IFI is entitled to recover its actual damages, Defendants' profits, and the costs of this action. The intentional and persistent nature of Defendants' unlawful acts renders this an "exceptional case," entitling IFI to an award of attorneys' fees under 15 U.S.C. § 1117(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff IFI prays this honorable Court enter an order of Judgment:

a.  Permanently enjoining Defendants, and their officers, agents, servants, subcontractors, and employees, and others controlled by or working in concert with Defendants, from any further use of the INVISIBLE FENCE Marks or any confusingly similar variant of those marks that is likely to cause confusion or mistake as between IFI, Defendants, and their respective products and services pursuant to 15 U.S.C. § 1116, and enjoining Defendants from unfairly competing with and making false or misleading representations of fact about IFI, its goods and services, or Halo's goods and services;

b.  Awarding IFI damages for Defendants' federal and common law trademark infringement, Defendants' federal and state trademark dilution, and Defendants' unfair competition and false advertising, pursuant to 15 U.S.C. § 1117;

c.  Declaring this case to be exceptional due to the willful and egregious pattern of Defendants' misconduct and awarding IFI its reasonable attorney fees, expert fees, and costs; and

d.  Awarding IFI such other and further relief as the Court may deem justified.

Respectfully submitted,

*s/John T. Winemiller*
John T. Winemiller (021084)
Ian G. McFarland (030549)

Elizabeth Harwood (037916)
Benjamin L. Dooley (041246)*
MERCHANT & GOULD P.C.
800 S. Gay Street, Suite 2150
Knoxville, TN  37929
Telephone:  (865) 380-5960
Facsimile:  (612) 332-9081
jwinemiller@merchantgould.com
imcfarland@merchantgould.com
eharwood@merchantgould.com
bdooley@merchantgould.com

*Attorneys for Plaintiff*

*\*Admission pending*