# EXHIBIT O



Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA 30308-2216

troutman.com

**Austin Padgett**
austin.padgett@troutman.com

April 10, 2023

**EMAIL**

Ian G. McFarland
Merchant & Gould P.C.
800 S. Gay Street, Suite 2150
Knoxville, TN 37929

**Re:    Radio Systems Corporation
         Your File: 16937.0550USAA**

Dear Ian:

I am responding to your letter of March 23, 2023, on behalf of Protect Animals with Satellites, LLC ("PAWS"). As explained below, there has been no misuse of your client's trademarks or any unlawful "attack" on Invisible Fence, Inc. ("IFI").

You demand retraction of the claim that PAWS's HALO® product is the "safest wireless fence ever created." As I explained in my previous letter, the context of the claim demonstrates PAWS's own demonstration of the safety of its product and how its innovative characteristics create a safer solution for pet owners than competitive products. Your attack on the claim boils down to your own "review" and conclusory determination based solely on "precision." Without any substantiation, you assert that the HALO® product's perimeter can "dramatically shift." If set up appropriately for the relevant property and according to product instructions, the HALO® product keeps pets safe through its unique algorithms applied to the most advanced GNSS systems available, in combination with several integrated sensors. Moreover, in the unlikely event of any perimeter failure or a pet escape, the HALO® product not only provides a patented pet guidance system, but also includes real-time location tracking for easier pet recovery–another built-in safety feature of the product.

Your attack based on consumer complaints is irrelevant to the question of safety and a clumsy attempt to smear PAWS's reputation. PAWS maintains an A+ rating at the Better Business Bureau and actively works with its customers to rectify any billing issues, product warranty claims, or other concerns. PAWS also provides unparalleled customer service and support to help ensure each customer's success with their pet safety goals. If a handful of online transactions have the definitive merit that you assign in your letter, IFI must surely have deep concerns about its own business that it should seek to address.



You also criticize PAWS's statement that its system "gently guides" pets back to safety, and you surmise that "the predicate for Halo's claim is its Return Whistle feature." Your assumptions only account for a portion of the HALO® product's pet guidance feature. In our client's patented system, the pet receives distinct feedback when moving away from safety versus when moving back to safety. That is, the HALO® system provides separate prompts to the pet in connection with a compass and motion sensor. Your assertion that RSC's PetSafe wireless fence also provides an audible stimulus is not analogous to the guidance feature unique to the HALO® product.

Finally, your letter accuses PAWS of false advertising claims about IFI's products. At the outset, you assert that my statement in our August 2022 letter regarding comparison's to IFI's buried-wire containment systems "strains credulity" and offer my client's first advertisement as your corroboration. PAWS is using your client's own nomenclature for its wired systems. As shown on IFI's own website, your client refers to the wired system as the "Invisible Fence" system:



Moreover, the advertisement you raise contains all of the contextual markers to demonstrate that the comparison at issue is to an in-ground wired system. The advertisement shows the wire, and, to further make the point, the man depicted in the video trips over the wire. There is no message to consumers other than a comparison to a wired system. Any reasonable measure of credulity remains entirely intact.



Your same confusion raises the assertion that PAWS is asserting that all of IFI's technology is outdated and limited to buried wires. You have drawn this interpretation outside the corners of the advertisement at issue. Consumers understand the phrase "Invisible Fence" as a wired, underground solution. And the comparison with an in-ground solution is the entire theme of PAWS's advertisement that you raise, which asks and answers this one question in bold lettering before enumerating the answers:

> **Why should I choose Halo's wireless fence instead of an in-ground wire or electric fence?**
>
> Halo's wireless fence is a GPS-based fence that works for all dogs with a neck size of 11 inch or larger and weighing 20+ lbs. It costs less than an in-ground wire fence for dogs and delivers far superior value. Here's why:

Any reference to "Invisible Fence" is understood in the context of the piece as identifying a wired system. As shown in the discussion above, your client uses the same phrase in the same way. Your client's website answers the question "How Does an Invisible Fence® Brand System Work?" with a picture of property with a cable wire running around it, and it answers the frequently asked question "Why is Invisible Fence® Brand the best electric dog fence?" by first stating that "Not all underground fences are the same." Any of your client's discussions around its other solutions are distinguished with different marks, such as Boundary Plus GPS, Perfect Start, or Outdoor Shields. Your client wants the benefit of consumers' immediate understanding of the Invisible Fence in connection with its wired system but wants to deny competitors the ability to fairly compare the products using the words that consumers commonly understand. That overreach, however, is contrary to law.

Your assertions regarding static correction and fear-based training also misconstrue the advertisement. As you mention in your own letter, IFI's technology is based, at least in part, on fear-based aversion training. Nothing in the advertisement you submitted states that IFI's Invisible Fence Brand System is limited solely to fear-based aversion training, but the use of such methods is an important distinction between the two systems to consumers. And it is one that PAWS is able to point out in demonstrating how its product is different from your client's Invisible Fence Brand System.

You also argue that "the vast majority of IFI systems . . . discriminate based on ingress or egress." But, as you admit, not all of them do. PAWS's understanding is that IFI's wired products also use a system that provides corrections as a product of time, not as a product of direction or location. This type of system can continue to correct during re-entry simply because the location and path of the pet does not matter in triggering the correction.

As I indicated in my previous letter, the context of any advertising statement matters, and, now after several months, you and your client continue to misconstrue the relevant facts at hand. You have not identified any false advertising, and PAWS will not abide these continued attempts to chill its legitimate comparative claims. To that end, PAWS reserves all of its claims and defenses in this matter.



Sincerely,

Austin Padgett