**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | |
|---|---|
| INVISIBLE FENCE, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>PROTECT ANIMALS WITH<br>SATELLITES, LLC, KEN EHRMAN, and<br>CESAR MILLAN<br><br>    Defendant. | Civ. Action No. 3:23-CV-00403<br><br><br>JURY TRIAL DEMANDED |

**DEFENDANTS PROTECT ANIMALS WITH SATELLITES, KEN EHRMAN, AND CESAR MILAN'S ANSWER TO FIRST AMENDED COMPLAINT AND DEFENDANT PROTECT ANIMALS WITH SATELLITES, LLC'S FIRST AMENDED COUNTERCLAIMS**

   Defendants Protect Animals With Satellites LLC ("Defendant" or "PAWS") Ken Ehrman, and Cesar Millan (collectively "Defendants"), through its counsel, hereby respond to the First Amended Complaint ("FAC") of Plaintiffs Invisible Fence, Inc. ("IF") and Radio Systems Corporation ("RSC") (collectively "Plaintiffs"). Defendants deny the allegations and characterizations in the FAC, including those in the unnumbered paragraphs and headings which are copied only for convenience, unless expressly admitted in the following paragraphs. Defendants' specific responses to the numbered allegations of the FAC are in the below numbered paragraphs as follows.

## PARTIES

   1.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the FAC, and therefore, deny them.

2.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the FAC, and therefore, deny them.

3.      Defendants admit that PAWS is a Delaware limited liability company and that its authorized agent for service of process is PHS Corporate Services, Inc., located at 1313 N. Market Street, Suite 5100, Wilmington, Delaware 19801. Defendants deny any remaining allegations in Paragraph 3 of the FAC.

4.      Defendants admit that PAWS does business, in whole or in part, as "Halo," offers to sell GNSS-based wireless dog collars that includes GPS technology called the "Halo Collar," and owns the website https://www.halocollar.com. Defendants deny any remaining allegations of Paragraph 4 of the FAC.

5.      Defendants admit that PAWS owns and maintains the website https://www.halocollar.com, through which the Halo Collar can be purchased. Defendants deny any remaining allegations of Paragraph 5 of the FAC.

6.      Defendants admit that Ken Ehrman is a cofounder and the managing partner of PAWS and that he resides at 71 Rolling Ridge Road, Upper Saddle River, New Jersey 07458. Defendants deny any remaining allegations of Paragraph 6 of the FAC.

7.      Defendants admit that Cesar Millan is a founding partner of PAWS and a resident of the state of California. Defendants deny any remaining allegations of Paragraph 7 of the FAC.

8.      Defendants deny the allegations in Paragraph 8 of the FAC.

## JURISDICTION AND VENUE

9.      Defendants admit that the FAC purports to set forth an action for trademark infringement and federal unfair competition under the Lanham Act, 15 U.S.C. § 1114 *et seq*. and 15 U.S.C. § 1125 *et seq*., and that this Court has subject matter jurisdiction over this action pursuant

to 15 U.S.C. §§ 1117 and 1125(a), but Defendants deny that they have committed or are committing such acts and deny Plaintiffs are entitled to any relief. Defendants deny any remaining allegations in Paragraph 9 of the FAC.

10.     Defendants admit that the FAC purports to set forth an action for trademark dilution under Tenn. Code Ann. § 47-25-513 *et seq*., and common law trademark infringement, but deny they have committed or are committing such acts and deny Plaintiffs are entitled to any relief. Defendants deny any remaining allegations in Paragraph 10 of the FAC.

11.     Defendants do not dispute personal jurisdiction over PAWS in this action, but PAWS denies the allegations in Paragraph 11 of the FAC.

12.     Defendants do not dispute personal jurisdiction over PAWS in this action and admit the Halo Collar can be purchased through the website https://www.halocollar.com, but otherwise deny the allegations in Paragraph 12 of the FAC.

13.     Defendants do not dispute personal jurisdiction over PAWS in this action, but otherwise deny the allegations in Paragraph 13 of the FAC.

14.     Defendants admit that Mr. Ken Ehrman and Mr. Millan are founding partners of PAWS. Defendants deny any remaining allegations in Paragraph 14 of the FAC.

15.     PAWS does not contest venue in this action, but Defendants otherwise deny the allegations in Paragraph 15 of the FAC.

## STATEMENT OF FACTS

16.     Defendants admit that pet containment systems utilizing buried wire exist. Defendants admit that pet containment systems utilizing corrective feedback, such as an audible tone, vibration, or static exist. Defendants admit that pet containment systems utilizing GPS technology exist. Defendants are without knowledge or information sufficient to form a belief as

3

to the truth of the remaining allegations in Paragraph 16 of the FAC and, on that basis, deny all such allegations.

17.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the FAC and, on that basis, deny all such allegations.

18.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the FAC and, on that basis, deny all such allegations.

19.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the FAC and, on that basis, deny all such allegations.

20.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the FAC and, on that basis, deny all such allegations.

21.     Defendants admit the FAC represents Exhibit A to be a copy of U.S. Trademark Registration No. 1,371,021 (the '021 Registration), but Defendants are without knowledge or information sufficient to form a belief as to the authenticity of Exhibit A to Plaintiffs' FAC. Defendants admit the face of Exhibit A indicates registration of INVISIBLE FENCING for: "Electronic animal confinement unit comprising transmitters, electric transformers, wires, and receiver collars." Defendants admit the face of Exhibit A indicates it was filed on July 17, 1984, registered on November 19, 1985, and the first use in commerce in August 1976. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 21 of the FAC and, on that basis, denies all such allegations.

22.     Defendants admit the FAC represents Exhibit B to be a copy of U.S. Trademark Registration No. 1,600,470 (the '470 Registration), but Defendants are without knowledge or information sufficient to form a belief as to the authenticity of Exhibit B to Plaintiffs' FAC. Defendants admit the face of Exhibit B indicates registration of INVISIBLE FENCE for:

4

"Electronic animal confinement unit comprising transmitters, electric transformers, wires, and receiver collars."  Defendants admit the face of Exhibit B indicates it was filed on May 12, 1989, registered on June 12, 1990, and the first use in commerce in January 1983. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22 of the FAC and, on that basis, deny all such allegations.

23.      Defendants admit the FAC represents Exhibit C to be a copy of U.S. Trademark Registration No. 1,765,230 (the '230 Registration), but Defendants are without knowledge or information sufficient to form a belief as to the authenticity of Exhibit C to Plaintiffs' FAC. Defendants admit the face of Exhibit C indicates registration of INVISIBLE for: "Electrical animal confinement system comprising transmitter, wire and receiver."  Defendants admit the face of Exhibit C indicates it was filed on December 9, 1991, registered on April 13, 1993, and the first use in commerce on July 15, 1992. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 23 of the FAC and, on that basis, deny all such allegations.

24.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the FAC and, on that basis, deny all such allegations.

25.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the FAC and, on that basis, deny all such allegations.

26.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the FAC and, on that basis, deny all such allegations.

27.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the FAC and, on that basis, deny all such allegations.

28.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the FAC and, on that basis, deny all such allegations.

29.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the FAC and, on that basis, deny all such allegations.

30.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the FAC and, on that basis, deny all such allegations.

31.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the FAC and, on that basis, deny all such allegations.

32.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the FAC and, on that basis, deny all such allegations.

33.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the FAC and, on that basis, deny all such allegations.

34.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of the FAC and, on that basis, deny all such allegations.

35.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the FAC and, on that basis, deny all such allegations.

36.     Defendants deny the allegations in Paragraph 36 of the FAC.

37.     Defendants admit that PAWS has offered to sell various products called the "Halo Collar" that utilize GPS. Defendants deny any remaining allegations in Paragraph 37 of the FAC.

38.     Defendants admit that PAWS initially offered to sell a product called Halo Collar in 2020 and continues to offer to sell products called the Halo Collar. Defendants deny any remaining allegations in Paragraph 38 of the FAC.

39.     Defendants deny the allegations in Paragraph 39 of the FAC.

40.     Defendants deny the allegations in Paragraph 40 of the FAC.

41.     Defendants deny the allegations in Paragraph 41 of the FAC.

42.     Defendants deny the allegations in Paragraph 42 of the FAC.

43.     Defendants deny the allegations in Paragraph 43 of the FAC.

44.     Defendants admit that halocollar.com/about/, which speaks for itself, identifies Mr. Ehrman and Mr. Millan as a "Founding Partner," and the article identified in Paragraph 44, which speaks for itself, as "Co-Founders." Defendants deny any remaining allegations in Paragraph 44 of the FAC.

45.     Defendants admit that halocollar.com/about/, which speaks for itself identifies Mr. Ehrman as "Managing Partner." Defendants deny any remaining allegations in Paragraph 45 of the FAC.

46.     Defendants deny the allegations in Paragraph 46 of the FAC.

47.     Defendants deny the allegations in Paragraph 47 of the FAC.

48.     Defendants deny the allegations in Paragraph 48 of the FAC.

49.     Defendants deny the allegations in Paragraph 49 of the FAC.

50.     Defendants deny the allegations in Paragraph 50 of the FAC.

51.     Defendants deny the allegations in Paragraph 51 of the FAC.

52.     Defendants deny the allegations in Paragraph 52 of the FAC.

53.     Defendants admit that the video at the YouTube link in Paragraph 53 (https://www.youtube.com/watch?v=T2z5qf_TDZY) aired on television around August 2021, and that the video speaks for itself. Defendants deny any remaining allegations in Paragraph 53 of the FAC.

54.     Defendants deny the allegations in Paragraph 54 of the FAC.

55.     Defendants deny the allegations in Paragraph 55 of the FAC.

56.     Defendants deny the allegations in Paragraph 56 of the FAC.

57.     Defendants deny the allegations in Paragraph 57 of the FAC.

58.     Defendants deny the allegations in Paragraph 58 of the FAC.

59.     Defendants deny the allegations in Paragraph 59 of the FAC.

60.     Defendants deny the allegations in Paragraph 60 of the FAC.

61.     Defendants deny the allegations in Paragraph 61 of the FAC.

62.     Defendants deny the allegations in Paragraph 62 of the FAC.

63.     Defendants deny the allegations in Paragraph 63 of the FAC.

64.     Defendants deny the allegations in Paragraph 64 of the FAC.

65.     Defendants deny the allegations in Paragraph 65 of the FAC.

66.     Defendants admit that PAWS received to a letter from Plaintiffs dated September 22, 2020, which speaks for itself. Defendants deny any remaining allegations in Paragraph 66 of the FAC.

67.     Defendants admit that Mr. Ehrman spoke to counsel for Plaintiffs on October 5, 2020 and that Mr. Ehrman sent an email to Plaintiff's counsel the same day, which speaks for itself. Defendants deny any remaining allegations in Paragraph 67 of the FAC.

68.     Defendants admit that PAWS received to a letter from Plaintiffs dated August 19, 2022. Defendants deny any remaining allegations in Paragraph 68 of the FAC.

69.     Defendants admit that PAWS, through counsel, sent a letter to Plaintiffs dated August 26, 2022. Defendants admit they previously denied, and continue to deny, any allegations of wrongdoing. Defendants deny any remaining allegations in Paragraph 69 of the FAC.

70. Defendants admit that PAWS received and responded to letters from RSC dated August 19, 2022 and March 23, 2023. Defendants admit they previously denied, and continue to deny, any allegations of wrongdoing. Defendants deny any remaining allegations in Paragraph 70 of the FAC.

71. Defendants deny the allegations in Paragraph 71 of the FAC.

72. Defendants deny the allegations in Paragraph 72 of the FAC.

73. Defendants deny the allegations in Paragraph 73 of the FAC.

## COUNT I

### Federal Trademark Infringement, 15 U.S.C. § 1114

74. Defendants incorporate by reference their responses contained in the foregoing paragraphs, as if fully set forth herein.

75. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75 of the FAC and, on that basis, deny all such allegations.

76. Defendants deny the allegations in Paragraph 76 of the FAC.

77. Defendants deny the allegations in Paragraph 77 of the FAC.

78. Defendants deny the allegations in Paragraph 78 of the FAC.

79. Defendants deny the allegations in Paragraph 79 of the FAC.

80. Defendants deny the allegations in Paragraph 80 of the FAC.

81. Defendants deny the allegations in Paragraph 81 of the FAC.

82. Defendants deny the allegations in Paragraph 82 of the FAC.

83. Defendants deny the allegations in Paragraph 83 of the FAC.

**Common Law Trademark Infringement**

84.     Defendants incorporate by reference their responses contained in the foregoing paragraphs, as if fully set forth herein.

85.     Defendants deny the allegations in Paragraph 85 of the FAC.

86.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86 of the FAC and, on that basis, deny all such allegations.

87.     Defendants deny the allegations in Paragraph 87 of the FAC.

88.     Defendants deny the allegations in Paragraph 88 of the FAC.

89.     Defendants deny the allegations in Paragraph 89 of the FAC.

90.     Defendants deny the allegations in Paragraph 90 of the FAC.

91.     Defendants deny the allegations in Paragraph 91 of the FAC.

92.     Defendants deny the allegations in Paragraph 92 of the FAC.

**COUNT III**

**False Designation of Origin (Passing Off), 15 U.S.C. § 1125(a)**

93.     Defendants incorporate by reference their responses contained in the foregoing paragraphs, as if fully set forth herein.

94.     Defendants deny the allegations in Paragraph 94 of the FAC.

95.     Defendants deny the allegations in Paragraph 95 of the FAC.

96.     Defendants deny the allegations in Paragraph 96 of the FAC.

97.     Defendants deny the allegations in Paragraph 97 of the FAC.

98.     Defendants deny the allegations in Paragraph 98 of the FAC.

99.     Defendants deny the allegations in Paragraph 99 of the FAC.

100.    Defendants deny the allegations in Paragraph 100 of the FAC.

10

101.    Defendants deny the allegations in Paragraph 101 of the FAC.

102.    Defendants deny the allegations in Paragraph 102 of the FAC.

103.    Defendants deny the allegations in Paragraph 103 of the FAC.

## COUNT IV

### Federal Dilution, 15 U.S.C. § 1125(c)

104.    Defendants incorporate by reference their responses contained in the foregoing paragraphs, as if fully set forth herein.

105.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105 of the FAC and, on that basis, deny all such allegations.

106.    Defendants are  without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106 of the FAC and, on that basis, deny all such allegations.

107.    Defendants are  without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107 of the FAC and, on that basis, deny all such allegations.

108.    Defendants are  without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108 of the FAC and, on that basis, deny all such allegations.

109.    Defendants are  without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109 of the FAC and, on that basis, deny all such allegations.

110.    Defendants deny the allegations in Paragraph 110 of the FAC.

111.    Defendants deny the allegations in Paragraph 111 of the FAC.

112.    Defendants deny the allegations in Paragraph 112 of the FAC.

11

113.    Defendants deny the allegations in Paragraph 113 of the FAC.

114.    Defendants deny the allegations in Paragraph 114 of the FAC.

115.    Defendants deny the allegations in Paragraph 115 of the FAC.

116.    Defendants deny the allegations in Paragraph 116 of the FAC.

<u>**COUNT V**</u>

**State Dilution, Tenn. Code. Ann. § 47-25-513**

117.    Defendants incorporate by reference their responses contained in the foregoing paragraphs, as if fully set forth herein.

118.    Defendants deny the allegations in Paragraph 118 of the FAC.

119.    Defendants deny the allegations in Paragraph 119 of the FAC.

120.    Defendants deny the allegations in Paragraph 120 of the FAC.

121.    Defendants deny the allegations in Paragraph 121 of the FAC.

122.    Defendants deny the allegations in Paragraph 122 of the FAC.

123.    Defendants deny the allegations in Paragraph 123 of the FAC.

<u>**COUNT VI**</u>

**False Advertising, 15 U.S.C. § 1125(a)**

124.    Defendants incorporate by reference their responses contained in the foregoing paragraphs, as if fully set forth herein.

125.    Defendants deny the allegations in Paragraph 125 of the FAC.

126.    Defendants deny the allegations in Paragraph 126 of the FAC.

127.    Defendants deny the allegations in Paragraph 127 of the FAC.

128.    Defendants deny the allegations in Paragraph 128 of the FAC.

129.    Defendants deny the allegations in Paragraph 129 of the FAC.

130.    Defendants deny the allegations in Paragraph 130 of the FAC.

131. Defendants deny the allegations in Paragraph 131 of the FAC.

132. Defendants deny the allegations in Paragraph 132 of the FAC.

## [PLAINTIFFS'] PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to any relief from Defendants and deny all the allegations contained in Paragraphs (a) through (d) of Plaintiffs' Prayer for Relief.

## GENERAL DENIAL

Defendants deny each and every allegation of the FAC not specifically admitted herein.

## AFFIRMATIVE DEFENSES

Subject to the responses above, Defendants contend and assert the following affirmative and other defenses in response to the allegations in the FAC. By asserting these defenses, Defendants do not admit that they bear the burden of proof on any issue and do not accept any burden they would not otherwise bear. In addition to the defenses described below, and subject to the responses above, Defendants intend to conduct discovery and specifically reserve all rights to assert additional defenses consistent with the facts that become known through the course of discovery or otherwise.

## FIRST AFFIRMATIVE DEFENSE

The FAC fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

There is no likelihood of confusion, mistake, or deception.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs do not own any protectable trademark rights in the words "invisible" or "fence" or the phrase "invisible fence."

13

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs do not own any protectable trademark rights in the words "invisible" or "fencing" or the phrase "invisible fencing."

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs do not own any protectable trademark rights in the word "invisible."

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' Registration No. 1,371,021 is invalid and unenforceable.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' Registration No. 1,600,470 is invalid and unenforceable.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' Registration No. 1,765,230 is invalid and unenforceable.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs abandoned any purported trademark rights they may have, if any, in the phrase "invisible."

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs abandoned any purported trademark rights they may have, if any, in the phrase "invisible fence" or variations thereof.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs abandoned any purported trademark rights they may have, if any, in the phrase "invisible fencing" or variations thereof.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs are engaged in trademark misuse and/or misuse of the registered mark "®" symbol in attempting to monopolize the market beyond the boundaries of any purported trademark rights it may have, including the limited registered goods, if any.

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendants' alleged use of the terms "invisible" and "fence," or the phrase "invisible fence," is not a trademark use and/or constitutes fair use, and thus cannot constitute trademark infringement.

## FOURTEENTH AFFIRMATIVE DEFENSE

Defendants' alleged use of the terms "invisible" and "fencing," or the phrase "invisible fencing," is not a trademark use and/or constitutes fair use, and thus cannot constitute trademark infringement.

## FIFTEENTH AFFIRMATIVE DEFENSE

Defendants' alleged use of the term "invisible" is not a trademark use and/or constitutes fair use, and thus cannot constitute trademark infringement.

## SIXTEENTH AFFIRMATIVE DEFENSE

The relief sought by Plaintiffs is barred because Plaintiffs' damages, if any, were not caused by Defendants.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Some or all of the relief sought by Plaintiffs is barred because Plaintiffs have failed to establish irreparable injury.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The alleged injury or damage suffered by Plaintiffs, if any, would be adequately compensated by damages. Accordingly, Plaintiffs have a complete and adequate remedy at law and is not entitled to seek equitable relief.

## NINETEENTH AFFIRMATIVE DEFENSE

Defendants' actions were innocent and non-willful.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in part or in whole, by the applicable statute of limitations.

## TWENTY FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in part of in whole, by the doctrines of laches, waiver, acquiescence, and estoppel.

## TWENTY SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in part or in whole, because Plaintiffs failed to mitigate any alleged injury or damages suffered by Plaintiffs, if any.

## TWENTY THIRD AFFIRMATIVE DEFENSE

Any asserted rights in the marks by Plaintiffs have always been generic and/or have been genericized for the relevant goods, with "invisible," "invisible fence," "invisible fencing" and variations thereof constituting generic terms for animal collars that replace the function of physical fences by creating boundaries. See e.g., https://wonderopolis.org/wonder/how-does-an-invisible-fence-work; https://dogsacademy.org/best-invisible-dog-fences/.

## TWENTY FOURTH AFFIRMATIVE DEFENSE

The statements alleged and complained of in the FAC are not literally false or misleading.

16

## TWENTY FIFTH AFFIRMATIVE DEFENSE

The statements alleged and complained of in the FAC did not nor do they have the capacity to deceive consumers.

## TWENTY SIXTH AFFIRMATIVE DEFENSE

The statements alleged and complained of in the FAC are not material and not likely to influence purchasing decisions.

## TWENTY SEVENTH AFFIRMATIVE DEFENSE

The alleged acts lack a sufficient relationship to PAWS's sales to constitute a causal connection between the acts and any product sales.

## TWENTY EIGHTH AFFIRMATIVE DEFENSE

The equitable factors do not support disgorgement of any of Defendants' profits and there is no other basis upon which to award profit disgorgement.

## TWENTY NINTH AFFIRMATIVE DEFENSE

All or some product sales and profits for which disgorgement is sought should be apportioned out of any of Plaintiff's requested recovery.

## THIRTIETH AFFIRMATIVE DEFENSE

This court lacks jurisdiction over Defendants Ken Ehrman and Cesar Millan.

## ADDITIONAL DEFENSES

Defendants reserve the right to assert additional defenses based on information learned or subsequently discovered.

17

## PAWS' COUNTERCLAIMS

Defendant Protect Animals With Satellites, LLC ("Counterclaim Plaintiff") asserts the following Counterclaims against Plaintiffs Invisible Fence, Inc. ("IF") and Radio Systems Corporation ("RSC") (collectively "Plaintiffs") and, by and through its counsel, alleges as follows:

## PARTIES

1.      PAWS is a company organized and existing under the laws of the State of Delaware, with a place of business located at 5465 Legacy Drive, Suite 650, Plano, Texas 75024.

2.      Upon information and belief based solely on Paragraph 1 of the FAC as pled by Plaintiffs, IF is a corporation organized under the laws of the State of Delaware with its principal place of business is located at 10427 PetSafe Way, Knoxville, Tennessee 37932.

3.      Upon information and belief based solely on Paragraph 2 of the FAC as pled by Plaintiffs, RSC is a corporation organized under the laws of the State of Delaware with its principal place of business is located at 10427 PetSafe Way, Knoxville, Tennessee 37932.

## JURISDICTION AND VENUE

4.      These Counterclaims arise under, respectively, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the Lanham Act, 15 U.S.C. § 1051 et seq. Counterclaim Plaintiff asserts these compulsory counterclaims with all reservations to its personal jurisdiction challenge and subject to the rules of compulsory counterclaims.

5.      This Court has jurisdiction over the subject matter of these Amended Counterclaims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 2201.  Further, the Court has subject matter jurisdiction over Counterclaim Plaintiff's counterclaims under 28 U.S.C. § 1367(a) because they are so related to Plaintiffs' claims that they form part of the same case or controversy under Article III of the United States Constitution.

18

6.      On information and belief, this Court has personal jurisdiction over Plaintiffs because, among other reasons, Plaintiffs' principal places of business are in this judicial district. Further, by filing its FAC in this judicial district, Plaintiffs have submitted to this Court's personal jurisdiction over Plaintiffs.

7.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Plaintiffs reside in this district. Further, by filing its FAC in this judicial district, Plaintiffs have consented that this Court is a proper venue for this action.

## GENERAL ALLEGATIONS

### Halo Collar by PAWS

8.      PAWS offers a smart collar device called the "Halo Collar" that allows a dog owner to create a geofence (i.e., a virtual perimeter) for their dog, using wireless technology to track the dog and help keep them within the fence.

9.      Halo Collar combines smart tracking technology with the canine behavioral wisdom of Cesar Millan, to help train and keep dogs safe. While dog owners have been using physical fences for many years, Halo Collar allows dog owners a more affordable and flexible solution by utilizing virtual fences, allowing a dog to roam safely off-leash within the virtual fence that the owner creates. The virtual fence might be in a backyard, at a beach while on vacation, or even a three foot perimeter surrounding the owner as they walk the dog off-leash. If a dog crosses over a virtual fence created by the owner, Halo Collar will alert the dog and guide it back to safety as well as notify the owner who can track the dog in real time.

10.      Some features of the Halo Collar are described at: https://www.halocollar.com/features/;        https://www.halocollar.com/shop-halo/;        and

19

https://support.halocollar.com/hc/en-us/articles/1500000479941-Where-can-I-find-downloadable-Owner-Manual.

11.     PAWS spent significant money and resources in developing, testing, and promoting its containment and tracking technology and its Halo Collar product.

12.     In 2020, PAWS launched the Halo Collar product, and it was an immediate success.

13.     Halo Collar has been featured in numerous articles and on television.

14.     Since launching, PAWS has already sold over 300,000 units of the Halo Collar.

**"Invisible Fence" Alleged Marks**

15.     On December 9, 1991, IF filed Application Serial No. 74228652 to register "invisible" as a trademark with the United States Patent and Trademark Office in connection with "electric animal confinement system comprising transmitter, wire and receiver," without disclaiming any portion of the alleged mark.

16.     On May 12, 1989, IF filed Application Serial No. 73799748 to register "invisible fence" as a trademark with the United States Patent and Trademark Office in connection with "electric animal confinement system comprising transmitters, electric transformers, wires and receiver collars." After the Trademark Office initially rejected the purported mark as merely descriptive, IF filed a Section 2(f) declaration in support of its application.

17.     On July 17, 1984, IF filed Application Serial No. 73490278 to register "invisible fencing" as a trademark with the United States Patent and Trademark Office in connection with "electric animal confinement unit comprising transmitters, electric transformers, wires, and receiver collars." After the Trademark Office initially rejected the purported mark as merely descriptive, IF filed a Section 2(f) declaration in support of its application.

20

18.     The applications—Serial Nos. 74228652, 73799748, and 73490278—eventually registered as U.S. Trademark Registration Nos. 1765230, 1600470, and 1371021 for the alleged trademarks INVISIBLE, INVISIBLE FENCE, and INVISIBLE FENCING.

**Genericness of the Marks**

19.     The primary significance of "invisible," "invisible fence," and "invisible fencing" to relevant consumers is as generic designations. Each of these designations are therefore incapable of distinguishing Plaintiffs' goods from those provided by Counterclaim Plaintiff and others in the electronic animal confinement systems industry.

20.     By claiming exclusive rights in the designations "invisible," "invisible fence," and "invisible fencing," Plaintiffs seeks to prevent Counterclaim Plaintiff and others from using the precise and most common designation that identifies their electronic animal confinement systems. Counterclaim Plaintiff and its competitors providing electronic animal confinement systems, as well as the general public, need to use the designations "invisible," "invisible fence," and "invisible fencing" to be able to properly identify these goods.

21.     The generic designations "invisible," "invisible fence," and "invisible fencing" have been used by industry members, consumers, and media to generically identify electronic animal confinement systems. For example, as shown in the article pictured below, Outdoor Life named a variety of companies and products in its "The Best Invisible Dog Fences of 2024," which is available at https://www.outdoorlife.com/gear/best-invisible-dog-fences/:

21



GEAR

# The Best Invisible Dog Fences of 2024

We review everything from classic in-ground
fences to the latest in GPS fencing

By Scott Einsmann  ✎  Updated On Feb 1, 2024 12:51 PM EST

|  |  |  |
|---|---|---|
| Best Wireless | Best In-Ground | Best Training Collar |

22.     As a further example, the reseller Chewy includes the following description of invisible dog fence systems, which is available at https://www.chewy.com/b/fence-systems-1452:

## Electric Dog Fence Systems

Keep your playful pup safe with invisible dog fence systems from Chewy. At Chewy, we care about your pet's safety. Without fencing, your pup can get out and into dangerous situations. With so many things that can harm your precious pooch, an electric dog fence can provide security and peace of mind. At Chewy, you can shop for dog fencing options that are safe and invisible. Invisible dog fence systems transmit energy between the boundary lines you establish. Your boundaries can be as big or as small as you desire. As your pup approaches the boundary line, a tone or vibration will deter her from going any farther. One benefit of a wireless pet fence is the lack of physical fence setup or upkeep. It won't affect your existing landscaping, but will provide safety for your dog while giving her freedom to roam. A wireless pet fence is perfect for homes in areas where there are restrictions or laws against fencing. It protects your dog from traffic, strangers and other dangers outside of your invisible boundary. Chewy carries a wide range of electric dog fence collars and invisible dog fence systems from brands like PetSafe and SportDOG. PetSafe Pawz Away Indoor Pet Barrier keeps your pup's paws from dirtying your clean carpets, getting into smelly trash or wandering into bathrooms. The indoor pet barrier helps curb your canine's curiosity with a high-pitched tone or safe static correction whenever she passes the invisible barrier. When it comes to outdoor security, consider the PetSafe Wireless Containment System. Mark boundaries of your yard with an invisible pet containment system that sends a static correction or irritating tone to your dog's collar, reminding her that she's crossing over into off-limit areas. An electronic dog fence can protect both your home and your loving pet. To make you and your dog's life even easier think about installing an automatic dog door so that your pup can enter and exit the house as they please. With the electric fence already in place you have nothing to worry about. Shop the best dog supplies from Chewy's online pet store!

Related Categories: Dog Cameras, Dog Trackers & GPS Dog Collars, Automatic Dog Treat Dispensers, Dog Training & Shock Collars, Dog Technology, Invisible Dog Fence Batteries

23.     Chewy, a product reseller used by Plaintiffs,  includes a category of products referred to as "Invisible Electric Dog Fences" and an associated description, which is available at Invisible & Electric Dog Fences: Wireless Containment Systems (Free Shipping) | Chewy:



24.     Additionally, Plaintiffs, when describing its own PetSafe branded products, uses "invisible" to describe aspects of its "wireless dog fences" in advertising on its website, https://www.petsafe.com/shop/dog/fencing/wireless-pet-fences/.

## Wireless Dog Fences

Embrace the ultimate solution for pet safety and freedom with PetSafe's innovative wireless dog fences. Designed to blend seamlessly into your lifestyle, our wireless dog fences offer unparalleled ease of installation and the peace of mind that comes with knowing your furry friend is safely contained within the boundaries of your home. Unlike traditional fencing options, a PetSafe wireless dog fence eliminates the need for complex setups or obstructive physical barriers. Whether you're interested in the versatility of an electric dog fence or the advanced technology of gps dog fences, our range of solutions ensures that you can find the perfect fit for your pet's needs and your outdoor space.

Our wireless systems, including the top-rated electric fences for dogs, are engineered to provide a safe, invisible boundary that respects your landscape's aesthetics while keeping your dog securely within your yard. Explore options like the cutting-edge Stay & Play Wireless Fence and the Wireless Pet Containment System, both designed to offer flexibility and ease of use. PetSafe is dedicated to enhancing pet ownership experiences through innovative products that promote safety and well-being, ensuring that every moment with your dog is filled with joy, not worry.

By choosing a PetSafe wireless dog fence, you're not just investing in your dog's safety, you're also giving them the gift of freedom. Say goodbye to the days of limiting leashes and restrictive barriers. Welcome to a world where your dog can roam freely, securely, and happily within the bounds of your loving home. Explore our extensive selection of in-ground dog fence solutions today and discover the peace of mind that comes with a safe, invisible boundary that keeps your furry family member close to home.

## Frequently Asked Questions about Wireless Dog Fences

### Do wireless dog fences really work?

Yes, wireless dog fences are highly effective in creating a secure boundary for your pets. Utilizing advanced technology, these systems create an invisible barrier that teaches your pet to stay within the confines of your yard. The training process involves using audible cues and static correction to help your pet understand where they can and cannot go, ensuring they stay safe while enjoying the outdoors.

25. Additionally, when negotiating a potential acquisition of PAWS, Plaintiffs and/or affiliates described the Halo Collar as "the first and only product to combine intuitive training, GPS and invisible fence into a smart collar." *See Radio Systems Corporation* v. *Protect Animals With Satellites, LLC* et al, No. 3:23-CV-403 (E.D.T.N), Dkt. 51, at 3.

### FIRST COUNTERCLAIM – Declaration of Non-Infringement and Non-Dilution

26. Counterclaim Plaintiff repeats and realleges all Counterclaim allegations, as if fully set forth herein.

27. At least based on the claims brought by Plaintiffs in the FAC, an actual case and controversy exists between Plaintiffs and Counterclaim Plaintiff as to whether or not Counterclaim Plaintiff infringes and dilutes all marks asserted by Plaintiffs including at least U.S. Trademark Registrations No. 1,371,021, No. 1,600,470, and No. 1,765,230.

28. Counterclaim Plaintiff's use of the "invisible," "invisible fence," "invisible fencing" marks and variations thereof does not and will not, (a) cause confusion or mistake or deceive the public in violation of Lanham Act § 32(1) (15 U.S.C. § 1114(1)); (b) constitute unfair competition or a false designation of origin in violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)); (c) constitute unfair competition or trademark infringement under state statutory or common law; (d) constitute dilution in violation of Lanham Act § 43(c) (15 U.S.C. §1125(c)); (e)

24

constitute dilution in violation of state statutory or common law; or (f) otherwise violate state or federal statutory or common law.

29.     There is no likelihood of confusion in the use of "invisible," "invisible fence," "invisible fencing" and variations thereof phrasing that Counterclaim Plaintiff has made:

30.     For example, there have been no reported instances of actual name confusion with Counterclaim Plaintiff (or indeed any other company selling similar described products) based on the use of the words/phrases "invisible," "invisible fence," "invisible fencing" and variations thereof

31.     Many of the accused uses are part of a sentence or phrase, not as stand-alone phrases (i.e., "invisible," "invisible fence," or "invisible fencing").  Therefore, the words/phrases are used as descriptive language in a crowded field of countless pet tech companies using variations of "invisible" phrasing for devices to contain a pet without a visible physical fence structure

32.     A simple internet search demonstrates the hundreds of results of searching "invisible," "invisible fence," "invisible fencing" and variations thereof. Further, as previously described, many retailers include entire product categories on their websites that are referred to as invisible fences and include many products offered by many different companies, including multiple products offered by Plaintiffs and affiliates, only some of which are offered under the accused marks. This underscores the descriptive nature of the term and the prolific use in the marketplace.

33.     Further, there can be no infringement of a generic mark, and thus because "invisible," "invisible fence," "invisible fencing" and variations thereof are generic descriptors of a containment product that cannot be seen (e.g., wireless, radio frequency, GPS, wire in-ground, etc.) such as the products that Counterclaim Plaintiff and Plaintiffs and many third parties offer

and use the term to describe, it is incapable of protection or of being infringed by Counterclaim Plaintiff.

34.     By reason of the foregoing, Counterclaim Plaintiff is entitled to a declaration that its use of "invisible," "invisible fence," "invisible fencing" and variations thereof does not and will not infringe or dilute Plaintiff's marks or otherwise violate state or federal statutory or common law.

## SECOND COUNTERCLAIM – Cancellation of Plaintiffs' Registrations – Genericness and Abandonment by Genericide

35.     Counterclaim Plaintiff repeats and realleges all Counterclaim allegations, as if fully set forth herein.

36.     At least based on the claims brought by Plaintiffs in the FAC, an actual case and controversy exists between Plaintiffs and Counterclaim Plaintiff as to the validity and genericness of the terms "invisible," "invisible fence," "invisible fencing" and variations thereof as used for describing pet containment devices not utilizing physical fencing.

37.     Counterclaim Plaintiff is damaged by the continued registration of Plaintiffs' U.S. Trademark Registrations No. 1,371,021, No. 1,600,470, and No. 1,765,230 in that the primary significance of "invisible," "invisible fence," "invisible fencing" and variations thereof to relevant consumers are as generic designations. This designation is incapable of distinguishing Plaintiffs' goods from those provided by Counterclaim Plaintiff and others in the electronic animal confinement systems industry.

38.     "Invisible," "invisible fence," "invisible fencing" and variations thereof are generic descriptors of a containment product that cannot be seen (e.g., wireless, radio frequency, GPS,

26

wire in-ground, etc.) such as the products that Counterclaim Plaintiff and Plaintiffs and many third parties offer and use the term to describe, and are therefore incapable of protection.

39.    Counterclaim Plaintiff chose to describe its products as "invisible," "invisible fence," "invisible fencing" and variations thereof when it decided to sell a pet containment system that serves as a replacement for a physical fence structure that is visible based on these terms/phrases being widely used and common descriptions for the genus of goods it was selling and used universally or near-universally in the pet containment industry for such a purpose.

40.    For the reasons stated above, including the rampant evidence of third-party use, industry use, and use as referring to a common genus of goods, the terms "invisible," "invisible fence," "invisible fencing" and variations thereof are generic terms that refer to the genus of pet containment products that serve as a replace to a typical physical fence that is "visible."  Such as for example, in-ground wired fences and wireless fences including radio frequency, Bluetooth, GPS, or other wireless signal technology. The relevant terms have lost any distinctiveness that Plaintiffs assert they might have at one time possessed.

41.    By claiming exclusive rights in the designation "invisible," "invisible fence," and "invisible fencing" Plaintiffs seeks to prevent Counterclaim Plaintiff and others from using the precise and most common designations that identify their electronic animal confinement systems. Counterclaim Plaintiff and its competitors providing electronic animal confinement systems, as well as the general public, need to use the designations invisible," "invisible fence," and "invisible fencing" to be able to properly identify these goods.

42.    Therefore, Counterclaim Plaintiff is, and will continue to be, injured by Plaintiffs' U.S. Trademark Registrations No. 1,371,021, No. 1,600,470, and No. 1,765,230, because they

grant Plaintiffs the right to exclude Counterclaim Plaintiff and others in the industry from using generic terminology to identify their goods.

43. Accordingly, Plaintiffs' registrations exceed the scope of permissible registration under 15 U.S.C. § 1052 for marks "by which the goods of the applicant may be distinguished from the goods of others."

44. By reason of the foregoing, Trademark Registrations No. 1,371,021, No. 1,600,470, and No. 1,765,230 should be cancelled pursuant to Lanham Act § 37 (15 U.S.C. §§ 1119, 1115 *et seq.*).

## THIRD COUNTERCLAIM – Classic and Nominative Fair Use

45. Counterclaim Plaintiff repeats and realleges all Counterclaim allegations, as if fully set forth herein.

46. At least based on the claims brought by Plaintiffs in the FAC, an actual case and controversy exists between Plaintiffs and Counterclaim Plaintiff as to whether or not Counterclaim Plaintiff infringes and dilutes all marks asserted by Plaintiffs including at least U.S. Trademark Registrations No. 1,371,021, No. 1,600,470, and No. 1,765,230.

47. Counterclaim Plaintiff's use of "invisible," "invisible fence," "invisible fencing" and variations thereof does not and will not, (a) cause confusion or mistake or deceive the public in violation of Lanham Act § 32(1) (15 U.S.C. § 1114(1)); (b) constitute unfair competition or a false designation of origin in violation of Lanham Act § 43(a) (15 U.S.C. § 1125(a)); (c) constitute unfair competition or trademark infringement under state statutory or common law; (d) constitute dilution in violation of Lanham Act § 43(c) (15 U.S.C. §1125(c)); (e) constitute dilution in violation of state statutory or common law; or (f) otherwise violate state or federal statutory or common law.

48. Counterclaim Plaintiff's use is a fair use expressly permitted by at least 15 U.S.C. 1115(b)(4), 15 U.S.C. § 1125(c)(3)(A), and common law.

49. For example, Counterclaim Plaintiff's use of "invisible," "invisible fence," "invisible fencing" and variations thereof are non-trademark "use[s], otherwise than as a mark…of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party." 15 U.S.C. 1115(b)(4).

50. Counterclaim Plaintiff chose to describe its products as "invisible," "invisible fence," "invisible fencing" and variations thereof when it decided to sell a pet containment system that serves as a replacement for a physical fence structure that is visible based on this being a widely used and common description for the genus of goods it was selling and used universally or near-universally in the pet containment industry for such a purpose.

51. As shown herein and in Plaintiffs' own allegations, that same purpose remains to this day as Counterclaim Plaintiff's typically use the term as part of a sentence or in the generic descriptions of "invisible," "invisible fence," or "invisible fencing," as do many others in the industry including Plaintiffs.

52. As a further representative example, Counterclaim Plaintiff's use of invisible," "invisible fence," "invisible fencing" and variations thereof has been a nominative fair use, as Plaintiffs' marks were used in comparative advertising to identify products marketed by Plaintiffs under the marks and not to identify any product sold by Counterclaim Plaintiff.

53. As a result, there can be no confusion based on this nominative use by Counterclaim Plaintiff.

54. By reason of the foregoing, Counterclaim Plaintiff is entitled to a declaration that its use of its "invisible," "invisible fence," "invisible fencing" and variations thereof does not and

29

will not infringe or dilute Plaintiffs' marks or otherwise violate state or federal statutory or common law.

## **PRAYER FOR RELIEF**

WHEREFORE, PAWS prays for relief as follows:

A.    Plaintiffs' FAC against PAWS be dismissed in its entirety with prejudice and that a judgment be entered in favor of PAWS and against Plaintiffs;

B.    That Plaintiffs take nothing by reason of its FAC;

C.    For an entry of judgment declaring that PAWS has not infringed and does not infringe, directly, vicariously, contributorily or in any other way, any purported right of Plaintiffs in the phrase "invisible fencing";

D.    For an entry of judgment declaring that PAWS has not infringed and does not infringe, directly, vicariously, contributorily or in any other way, any purported right of Plaintiffs in the phrase "invisible fence";

E.    For an entry of judgment declaring that PAWS has not infringed and does not infringe, directly, vicariously, contributorily or in any other way, any purported right of Plaintiffs in the phrase "invisible";

F.    That the Court enter an order instructing the USPTO to cancel the Asserted Registrations;

G.    For an award of PAWS's attorney's fees and costs; and

H.    That PAWS be granted all such other and further relief as the Court deems just and proper.

30

## JURY DEMAND

Counterclaim Plaintiff demands a trial by jury on any claim or issue triable of right by a jury.

Dated: December 5, 2024        Respectfully submitted,

By:/s/Michael J. Bradford
    Michael J. Bradford, TN BPR No. 22,689
    **LUEDEKA NEELY, P.C.**
    P.O. Box 1871
    Knoxville, TN 37901
    Telephone: 865-546-4305
    Facsimile: 865-523-4478
    Email: MBradford@Luedeka.com

    Gregory S. Bishop, CA Bar No. 184680, *pro hac vice*
    gregory.bishop@troutman.com
    **TROUTMAN PEPPER HAMILTON SANDERS LLP**
    Three Embarcadero Center, Suite 800
    San Francisco, California, 94111-4057
    Telephone: 650-802-3600
    Facsimile: 650-802-3650

    Puja Patel Lea, GA Bar No. 320796, *pro hac vice*
    puja.lea@troutman.com
    Haden Marrs, GA Bar No. 817198, *pro hac vice*
    haden.marrs@troutman.com
    **TROUTMAN PEPPER HAMILTON SANDERS LLP**
    600 Peachtree Street, NE, Suite. 3000
    Atlanta, GA 30308
    Telephone: 404-885-3000
    Facsimile: 404-962-6518

    Ben Wagner, *pro hac vice*
    ben.wagner@troutman.com
    **TROUTMAN PEPPER HAMILTON SANDERS LLP**
    11682 El Camino Real, Suite 400
    San Diego, CA 92130
    Telephone: (650) 802-3600

    ***Attorneys For Defendants***

31

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2024, the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/Michael J. Bradford
Michael J. Bradford
Attorney for Defendants